## JAMES SPESS v. STATE.

No. A-3617.   Opinion Filed Oct. 31, 1921.

(201 Pac. 395.)

(Syllabus.)

1. **Homicide—Murder—Sufficiency of Evidence.** For evidence examined and held sufficient to sustain a conviction for murder, see body of opinion.

2. **Trial—Sufficiency of Instruction on Alibi.** An instruction on the defense of alibi, not fundamentally erroneous, will not be held to be reversible error because inartificially drawn.

Appeal from District Court, Pawnee County; Owen Owen, Judge.

James Spess was convicted of murder, and appeals. Affirmed.

Thompson & Smith, for plaintiff in error.

S. P. Freeling, Atty. Gen., and E. L. Fulton, Asst. Atty. Gen., for the State.

MATSON, J.  James Spess was charged by information and convicted of the crime of murder in the district court of Pawnee county, and sentenced to life imprisonment.

The evidence on behalf of the state is to the effect that on the afternoon of the 12th day of January, 1921, three men held up and robbed the bank in the town of Tarlton. They came into town on horseback, and left their horses about a quarter of a mile from the bank in a creek bottom. Two of the men went into the bank, and the third was stationed at a

point near the Frisco railroad tracks between the bank and the place where the horses were left. One of the two that went into the bank was armed with a pistol, the other with a rifle.

Several persons were in the bank at the time, some officers and employees of the bank, others, customers. The robbers at the point of their weapons compelled these parties to face the wall with their hands raised above their heads and also compelled the bankers to open the cash drawer and safe. After taking several hundred dollars of the bank's money (mostly in silver) and loading it into a sack, the bankers and others there were  compelled to carry the sack to the place where the horses had been left. In the meantime one person, who was in a separate room of the bank, realizing what was taking place, escaped unnoticed through a rear door and organized a posse of citizens to apprehend the robbers, if possible. While the robbers and those who had been compelled to accompany them were at the horses, this posse appeared, but the robbers had protected themselves by using the others as a line between them and the crowd that followed.

While the robbers were fixing the money on the horses, S. R. Moore, deputy sheriff, stepped out into an open place in a field about 125 yards away and was shot and killed by a shot fired from a rifle in the hands of Spess.

None of the robbers were masked. The entire transaction covered a considerable space of time—approximately 30 minutes—and during that time the parties who were compelled to accompany the robbers had opportunity to and did observe them closely. These parties unanimously identify Spess as one of the men who entered the bank and the one who fired the shot that killed Moore.

In addition there is also the testimony of an alleged accomplice, Imhofe. This witness detailed the plan of the robbery, and testified Spess was one of the perpetrators thereof,

and it is unnecessary to enlarge upon his testimony, except to state that it is corroborated by other circumstances and facts other than the evidence of the witnesses who positively identified Spess.

The defense interposed was an alibi, and numerous witnesses were introduced in behalf of defendant in an attempt to convince the jury that the defendant Spess was not and could not have been at the scene of the crime at the time of its commission.

The record is very voluminous, containing about 700 pages of typewritten matter, and it would consume too much space to give a synopsis of each witness' testimony. The evidence is in direct conflict upon the question of the identity of the defendant and his presence at the commission of the robbery and murder of Moore.

The contention is advanced that this evidence is insufficient to support a conviction; that the great weight of the evidence, the most credible evidence supports the truthfulness of the alibi. All these witnesses were before the jury and the trial court. The jury after due consideration and deliberation decided this issue of fact adversely to the defendant. The trial court having seen these witness, noted their demeanor, etc., was in a much better position to judge of the correctness of the jury's decision than is this court.

While the evidence is conflicting and apparently irreconcilable, it was the exclusive province of the jury to determine whom of the witnesses to believe and whom to disbelieve or whose testimony to disregard.

The verdict was evidently not the result of passion or prejudice, as this trial took place over four years after the commission of the crime; neither do we think the verdict unfounded in fact—this being the second conviction and appeal

of this defendant to this court—the first trial resulting in a conviction of murder with life imprisonment. See Spess v. State, 13 Okla. Cr. 277, 164 Pac. 131. The evidence of the state is amply sufficient to support the conviction.

It is also urged that the trial court committed reversible error in giving the following instruction on the defense of alibi:

"You are instructed that the defendant has interposed in this case as one of his defenses what is known in law as an alibi, that is, that the defendant was at another and different place at the time of the commission of the crime alleged and charged in the information herein. The law is that such a defense is proper and legitimate, and the jury should consider all of the evidence bearing upon this point, whether introduced by the state or the defendant, and if after a careful consideration of all the evidence, you are convinced beyond a reasonable doubt that the defendant was not at another and different place at the time of the commission of the crime charged in the information, then the defense known in law as an alibi has failed, and you should then consider the case the same as if the defendant had never interposed this defense; but, if you entertain a reasonable doubt, after a careful consideration of all the evidence in the case, as to whether the defendant was in such other and different place at the time the crime was committed, then and in that event you should resolve that doubt in favor of the defendant, and should acquit him."

Counsel for defendant has filed a lengthy brief, citing numerous authorities which are contended as being in point that the foregoing instruction is prejudicial, in that it places too great a burden on defendant to establish the defense of alibi, and that the instruction is evasive and confusive. No authority is cited containing a criticism of an instruction on alibi couched in the language employed by the trial court in the instant case.

In the case of Thompson v. State, 6 Okla. Cr. 50, 117 Pac. 216, this court, at page 66 of the official report (117 Pac. 223) set out a form of approved instruction on the defense of alibi. Here the trial court followed the form of instruction approved in the Thompson Case with certain additional matter which in our opinion does not in any particular require the defendant to establish his alibi beyond a reasonable doubt or even by a preponderance of the evidence. The instruction given, when considered as a whole, requires the jury to acquit if a reasonable doubt is entertained that defendant was in another and different place at the time the crime was committed. The instruction given is not fundamentally erroneous, and in the absence of a request for a more definite instruction on the subject we think it was sufficient.

The defense of alibi is not an involved one. The adult with ordinary intelligence and limited experience is fully able to understand and comprehend that if a person (whose presence at the scene of the crime is relied upon for conviction) was at another, different and distinct place at that time, it was a physical, as well as legal, impossibility for such person to have committed the offense. Alibi is not an extrinsic defense. It amounts to nothing more than a mere traverse of the material averments of the information or indictment. It is introduced for the purpose of creating a reasonable doubt of guilt, and we think its nature is fairly understood by the average juror. Apparently it has been more of a nightmare to the courts than to the juries. As this defense involves a clear-cut issue of fact, practical men (such as compose a trial jury) can more readily comprehend and truthfully decide the issue than can the courts, trained in technicalities, establish uniform principles of law applicable to such defense in every jurisdiction. It may be seriously doubted if any instruction on alibi should be given beyond the general instructions ''that the defendant is presumed to be in-

nocent," and "that the burden rests upon the state to prove his guilt beyond a reasonable doubt." The views herein expressed result from a consideration of the numerous and conflicting decisions construing instructions on alibi and the varied reasons given for such holdings.

In some jurisdictions the burden is upon the defendant to establish this defense "to the satisfaction of the jury," in others "by a preponderance of the evidence," in others "by evidence tending to raise a reasonable doubt of guilt." Why these various holdings? Certainly such confusion could never have arisen had no specific instruction on alibi been given. In all these jurisdictions the state is required to establish guilt "beyond a reasonable doubt"; if the burden never shifts to the defendant to establish his innocence, then it is apparent that any evidence (be it that of alibi or weakness of the state's case) which creates a reasonable doubt is sufficient to authorize an acquittal.

The general instruction on "reasonable doubt" ought to be sufficient to cover a simple issue of fact such as an alibi, any other instruction on the subject, if correctly stated in this jurisdiction, would be nothing more in its final analysis than stating the same burden in different language.

While we cannot give our unqualified approval to the form in which the foregoing instruction was given, it cannot be said that the instruction as a whole was prejudicial, or that it shifted the burden from the state to establish guilt "beyond a reasonable doubt."

The judgment of the trial court is affirmed.

DOYLE, P. J., and BESSEY., concur.