## JOHN ROCHEL et al. v. STATE.

No. A-3709. Opinion Filed Feb. 25, 1922.
(204 Pac. 466.)

(Syllabus.)

1. Trial—Instructions—When Refusal of Instruction on Circumstantial Evidence not Error. Where part of the evidence is direct and part circumstantial, it is not error to refuse to give an instruction on circumstantial evidence.

2. Trial—Instruction on Alibi and Reasonable Doubt not Misleading. Instruction on the subject of alibi examined, and held not such as to operate in a reversal of the judgment, and not misleading when considered with another instruction given.

3. Robbery—Evidence Sustaining Conviction. Evidence examined, and held sufficient to support the verdict and judgment.

Appeal from District Court, Bryan County; George S. March, Judge.

John Rochel, Walter Rochel, and Cecil Turnbull were convicted of the crime of conjoint robbery, and each sentenced to serve a term of five years' imprisonment in the state penitentiary, and each appeals. Affirmed.

This prosecution was instituted by information filed in the district court of Bryan county by the county attorney thereof on the 18th day of November, 1918.

The information jointly charged John Rochel, Walter Rochel, and Cecil Turnbull with the crime of conjoint robbery alleged to have been committed in said county on the 27th day of October, 1919. The person alleged to have been robbed was Carl Simmons. The trial occurred in October, 1919, and resulted in the conviction of all of said defendants with punishment of each assessed at five years' imprisonment in the state penitentiary at McAlester.

The alleged robbery occurred on a public highway on Sunday the 27th of October, 1918, at about 8 o'clock p. m. According to the state's theory, the robbery was the result of a conspiracy entered into between these defendants. Carl Simmons, the young man robbed, had come to the town of Achille that afternoon about 5 o'clock on the train from Denison, Tex. He testified that his intention was to make a visit to some friends at the town of Yuba, a village about 10 or 11 miles east of Achille; that he made inquiry to procure a service car for that purpose, and was introduced to Walter Rochel, who was at that time running a Ford car in public service at the town of Achille. Simmons testified that Rochel wanted to charge him more than he was willing to pay to make the trip, at first asking him $15 and thereafter claiming that he (Rochel) had received a telephone communication from somebody close to the town of Yuba, and that he would make the trip for $7.50. The testimony showed, however, that the telephone line between Achille and Yuba was not in working order that day, and that no phone calls had come in over it. After Simmons and Walter Rochel had failed to reach an agreement between them as to the taxi fare to be charged Simmons, and after some conversation between them Walter Rochel wanted Simmons to go out and see some girls with

him, and when Simmons refused he asked Simmons to take a ride with him, which Simmons consented to do. It was then 7:30 in the evening, and, according to Simmons, he and Walter Rochel got into Rochel's car and started to take a ride in an easterly direction from the town of Achille. It had drizzled rain that day, and the roads were muddy and slippery. Simmons testified that the car was going along nicely until they had got about a quarter of a mile east of Achille when Walter Rochel commenced choking the feed of the gas to the engine, and the car then began to miss fire and pop; that when they got about a half mile from town where there was a place in the road they could turn around, instead of turning around, Walter Rochel turned on a public highway leading to the south; that the car was then going 2½ or 3 miles an hour; that they drove south on this road 300 or 400 yards, when two men appeared in front of them with their faces partially masked with handkerchiefs; that Walter Rochel drove the car up to these two men and stopped; that they had not been ordered to stop at that time; that as soon as the car stopped one of the men threw a pistol down on them, and said, "Throw up your hands." Thereupon Simmons testified that he got out of the car with his hands up, and that Walter Rochel followed him out of the car, but did not put his hands up until after he got out of the car; that the person who held the pistol on him was Cecil Turnbull, and that the other person in the road was John Rochel; that John Rochel searched the witness Simmons and took from his person at that time a sum approximately $20 in silver and currency, also a gold watch and chain and a fountain pen; that they searched a couple of the pockets in the clothing of Walter Rochel, and then told them, "Get in that car and go on to Durant, you s—— of b's."

That they then drove south a little ways and turned around and started back to Achille, and on the way back Walter Rochel said: "That was a hell of a come-off, wasn't

it?'' And afterwards, when they had gotten pretty close to the town of Achille, Walter Rochel said: ''Now, you wait. I will get the law. I know them and you don't.'' That thereafter the witness got out of Rochel's car in the town of Achille, and that Walter Rochel drove around and put his car up. The witness then reported the robbery to the officers, and immediately swore out warrants of arrest against each of these defendants. That after Walter Rochel had gone away with the car he (Rochel) came back to town, and went into the telephone office. That shortly thereafter he saw both John Rochel and Cecil Turnbull at different times go into the telephone office. This was about 30 minutes after they had returned to town. Thereafter, while witness was in the drug store of the town talking to the officers, John Rochel came in, and witness said, ''There is the fellow that went through my pockets,'' and John Rochel replied, ''You are a lying s—— of b——.'' Witness further testified that after the examining trial in the town of Achille Walter Rochel said to him: ''You s—— of b——, we will get you after the trial.''

On cross-examination, as to the identity of Cecil Turnbull, the witness testified that he had seen Cecil Turnbull sitting in front of a store in the town that afternoon; that he was not positive that he could identify Cecil Turnbull; that he had seen Cecil Turnbull with Walter and John Rochel that afternoon when he first came to town, and that he judged it to be Cecil Turnbull from his size; that the motor of the car was left running when they got out at the time of the robbery and that the parties who did the robbing were up pretty close to them; that it was a dark night, and the only light at the scene of the robbery came from the headlights in the car.

A. M. McPherson testified, in substance: That he was a deputy sheriff at Achille. That he arrested the defendants that night for the robbery of Carl Simmons; that Carl Simmons

accused John Rochel of being the man who went through his pockets, and that Rochel said, "You are a lying s—— of b——." That he searched the defendant John Rochel immediately after his arrest, and found $4 or $5 in his left-hand outside coat pocket. (This was the pocket that Simmons said that Rochel put part of his money in.) That when Turnbull was arrested Simmons said he looked to be about the size of the man that was with Rochel, but he could not identify him positively; that when Walter Rochel was arrested he said that he was robbed too; that they had got his wrist watch; that he had the strap around his wrist; that they had taken his watch out of it and thrown the strap back into the car. But the witness further testified that afterwards Walter Rochel had told him that he had left his watch with Miss Carrie Dobbins, the operator at the telephone station; that the next morning after the robbery the witness made two trips out to the scene of the robbery; that Mr. Simmons had showed him where the robbery had taken place; that he found some tracks "like where a man had been standing; some where they had been walking away from there; also walking up that way"; that he made measurements of these tracks, and also measments of the shoes of the defendants John Rochel and Cecil Turnbull, and that the tracks and shoes measured to be the same size; that afterwards John Rochel and Cecil Turnbull were taken to the scene of the crime, and placed their feet in the tracks found there, and that their feet fit these tracks; that one of the tracks was made by a new pair of shoes, and one by a pair of shoes that had been worn considerably; that Cecil Turnbull was wearing a new pair of shoes, and John Rochel was wearing an old pair of shoes.

J. W. Barnett, a justice of the peace at Achille, testified that he was present when John Rochel was searched after the robbery, and was also present when Walter Rochel and Cecil Turnbull were brought in. This witness heard what was

said and saw what was done at those times, and his testimony tends to corroborate that of the Witness McPherson.

D. B. Verdery testified, in substance: That he lived at Achille; was the agent for the Missouri, Oklahoma & Gulf Railroad. That he worked at the depot until after the train came in from the south on the afternoon of October 27, 1918, and then went over to the bank and did some work there and then started to go home. This was between 5 and 6 o'clock in the evening. That when he left the bank and came back towards the depot he saw John Rochel and Cecil Turnbull and Walter Rochel and Carl Simmons. Walter Rochel and Carl Simmons were immediately across the street, sitting on some seats in front of a store, and Cecil Turnbull and John Rochel were on the depot platform, standing by the side of the baggage truck, and they walked off south down the railroad track.

Ella McBride testified: That she was 24 years old and lived in Achille. That she remembered the occasion of the robbery. That she lived southeast of the depot; that she saw two boys that she took to be John Rochel and Cecil Turnbull walking south along the railroad on the afternoon of the robbery after the train had gone north, but before sundown. That they were not very far south of the depot, and were walking in the direction of Cecil Turnbull's home, which was south from there and east of the railroad track. That she did not watch them to see which way they went. The last time she saw them they were on the track.

Demie Baldwin testified: That she was 17 years old, and lived at Achille. That on the night of the robbery she was at Mrs. Scribner's house about three-quarters of a mile north of that town. That Mrs. Scribner was sick, and that she had gone out there to stay with them. That John Rochel and his little brother Hewey came to the house that night, and that John Rochel had a watch in the inside lining of his coat

and pulled it out to see what time it was. This was 20 minutes after 1 o'clock. That the watch was a little round gold watch something like a lady's watch. The witness did not know whether it was an open-face or a hunting case watch, or whether he had a chain on it or not. That John Rochel stayed there about an hour and talked to Lelah Scribner, who was his sweetheart. That John Rochel and Lelah Scribner had a private conversation together, and John Rochel was pale and seemed to be nervous.

Annie Baldwin, a sister of Demie Baldwin, testified that she was 18 years old and was also at the Scribner home that night. Her testimony corroborates that of Demie Baldwin.

Carrie Dobbins testified: That she was running a telephone switchboard, and had charge of the long-distance calls at Achille on the day of the robbery. That the long distance line between Achille and Yuba was out of order on the day of the robbery, and that no calls came over it that day. That the first call that came over the line was on the evening of the next day. That John Rochel was the lineman and night operator for the telephone company. That she remembered seeing Walter Rochel in the telephone office that afternoon between the hours of 4 and 8 o'clock. That the line between Achille and Yuba was not down that day, but simply out of order. That it had been raining that day. That Walter Rochel was the first person to tell her about the robbery. That Cecil Turnbull and John Rochel came into the telephone office after Walter was up there, and just at the time that the witness started to leave. That Walter Rochel owned a wrist watch. That he did not have it that evening. He first said that John had his watch, and then he said he had left it at home. That Walter's watch was an open-face gold wrist watch.

W. M. Kemp testified in behalf of the defendants that he was acquainted with the roads and section lines east of Achille, and knew where the gin was located. Witness identified a map or diagram of these roads. And the substance of his testimony was that it was something like a mile from the Palace Drug Store in Achille to the point where the robbery took place.

H. G. Grinsley, for the defendants, testified in substance the same as the witness Kemp.

Wade Grimes testified in substance that he was acquainted with the defendants, and was working in the Wilkins Drug Store in Achille on the day that the robbery took place. That the drug store is located about a block and a half west of the depot on the north side of the street. That the restaurant is opposite on the south side of the street. That the last customers he waited on in the drug store that evening were Cecil Turnbull, Bob Ozment, Clyde McPherson, and somebody else. He did not remember who the fifth person was. That he would have judged it to have been about 7 o'clock in the evening.

Clyde McPherson testified substantially the same as the witness Grimes, as did also Bob Ozment.

W. F. Maxwell tetified, in substance: That he lived at Achille, and had been living there four years. That he was acquainted with the defendants. That he lived with his father and mother and was in the mercantile business. That on the Sunday of the robbery he had been to Durant, and returned home about 3 o'clock in the afternoon. That between 7 and 8 o'clock that evening he went down town to get a lunch. That after he ate his lunch he went back to his store, which was in the first block west of the depot on the north side of the street. That he passed Wilkins Drug Store and saw Bob Ozment, Wade Grimes, Clyde McPherson, Cecil

Turnbull, and somebody else in there. Witness did not know who the other person was. That as he was going to his store he saw an automobile pass, a Ford car. That he took it to be Walter Rochel driving the car, and there was somebody with him, and they were going east towards the depot.

Walter Rochel, one of the defendants, testified: He was 18 years old, and lived at Achille. That in October, 1918, he was running a service car at Achille; had been running it since June of that year. That he first met the prosecuting witness Simmons about 5 o'clock on October 27th, 1918. That Simmons wanted him to take him to Yuba in his service car, and said maybe he would want to go on to Denison, and asked what the charges would be. Witness told him $7.50 to Yuba and $15 if he went on to Denison. Simmons said, ''I don't know whether I will go on or not. I will see you directly,'' and walked off. Rochel then went up to the telephone office to tell his brother, John, that he couldn't work for him that night; that he was going to make a drive in his service car. That John was not up there, and he told Miss Carrie Dobbins to tell him. That he afterwards saw his brother John and later also saw Simmons again. Simmons was out in front of the restaurant, '' and I told Mr. Simmons, 'Let's go,' and he came out and got into the car, and we started on our way to Yuba. It was dark, and the lights were burning in the car. It had been drizzling rain, and the roads were muddy.'' Witness said: He did not have his watch with him that night, but had on the leather strap that the watch was carried in. That he had left his watch on the dresser at home, and later found out that his brother John had the watch. That he had since traded the watch to Steve Dwight for another watch and $12.50 in money. That he thinks Dwight now lives in Fort Worth, Tex. That when they started out on the trip to Yuba the car was not running well. The engine was popping. That he reached over and adjusted the carbureter when they got

out to about where the gin was. That after that it ran all right. That he was driving about ten miles an hour. That when he got to the corner to turn south there were some weeds on the right hand side of the road and he honked the horn just before turning the curve. That in crossing the mud holes he had to drive his car in low. That after they had turned south and gone a quarter of a mile two fellows came up to them and one of them took out a gun and held it in their faces and said: "You Durant s— of b.'s, get out of it." Witness then said that he reached down and pulled up the emergency brake and left the motor running and the lights burning, and held his hands up, and got out on the side of the car the steering wheel was on. That Simmons got out on the other side. That he (Rochel) walked around in front of the car to the side where Simmons was, and some one searched them. That it was not the fellow with the gun. That these fellows had handkerchiefs partly over their faces. That it was a dark night. That they took a pocketbook off of him. That he could not tell exactly how they were dressed. That he was positive that the man that searched him was not his brother John, although he was about the same height as his brother John. That he got $19 and some odd cents off of him, some of which was currency in a black bill fold; a $10 bill, a $5 and two $1 bills. That they took the silver out of his trousers pocket. That the fellow that held the gun seemed to be a little, short, chunky fellow. That he was not Cecil Turnbull. That they searched Simmons first and witness afterwards, and then told them to get in the car. They they got back into the car and these fellows were standing on the side of the road, and told them to go on and not come back that way. That they went on down the road and Simmons said: "You take me over to Yuba. I haven't got the money, but I will give you a check." Witness replied, "Let's go back and report to the law." Then they turned around and went back by the place where they had

been robbed. Witness told Simmons he would report to "the law," after they got back to town. That witness let Simmons out of the car and went down to his home and told his father and mother that he had been robbed. That he did not tell Simmons that they had taken a watch off of him nor show him the empty watch case. That he did tell Simmons that this was the second time that he had been robbed, and did tell him that the first time he was robbed they took his watch. That after he had gone home and put his car up he came back up town to the telephone office, about four blocks away. That he went up there to tell his brother that he had been robbed. That his brother was not there, but came in in about five minutes. But before his brother came in he had told Carrie Dobbins that he had been robbed. That when he told his brother John that he had been robbed John said, "I will go down to the drug store and see." And John went away, and then Cecil Turnbull came up to the telephone office, and then "Milt McPherson came up there and arrested Cecil Turnbull and me." That Milt McPherson left them in John's room, in the telephone office after arresting them, with the understanding that they were not to leave there. That John Rochel afterwards left the room that night, and was gone something like an hour and a half. Witness also denied telling Carl Simmons that he had received a phone message from out about Yuba that day, and that he would take him for half price after that. Witness denied that he and his brother and Cecil Turnbull had planned this robbery. That before he left with Simmons he did not know where Cecil Turnbull and John Rochel were. That he had seen Cecil at the drug store about five minutes before he left to go to Yuba.

On cross-examination the witness admitted that after he got back to town, after the robbery and after putting his car up, instead of notifying the officers of the robbery, he went

up to the telephone office where he said Miss Dobbins was, and that she stepped out, and that several calls came in over the long-distance phone. That he did not remember where these calls came from or who put them in, but that he commenced to make out tickets for them, and was writing when the officers arrested him. Witness also admitted that he asked the Simmons boy on the way back from the robbery to let him report it to the officers. Witness denied telling Mr. McPherson that the robbers had gotten his wrist watch. Witness said he did not remember telling the officers the next day after the robbery that the robbers had gotten thirty odd dollars off of him instead of nineteen. Witness said his brother John did not own a watch; that John had the witness' watch on the day of the robbery.

Carrie Dobbins, in rebuttal for the state, testified that Walter Rochel did not tell her anything about his brother, nor tell her that he was going to the country.

Jim Kersey, in rebuttal, testified in substance that he lived at Durant, that he was sheriff of Bryan county in October, 1918, went down to Achille on the day after the robbery, heard a conversation Walter Rochel had with the assistant county attorney, in which Walter said the robbers had taken thirty some odd dollars off of him.

A. W. Barnett, J. M. Bamer, L. F. Elliott, and F. M. Elrod all testified that the general reputation of Walter Rochel in the community of Achille was bad for truth and veracity.

Utterback & McDonald, for plaintiffs in error.

S. P. Freeling, Atty. Gen., and W. C. Hall, Asst. Atty. Gen., for the state.

MATSON, J. (after stating the facts as above). It is first contended that the trial court erred in failing and refus-

ing to give an instruction on the law of circumstantial evidence as applied to the guilt of the defendant Cecil Turnbull.

Counsel for the defendant requested the following instruction on this subject:

"In this case the state relies upon circumstantial evidence to convict the defendant, Cecil Turnbull, and in this connection you are instructed that to warrant a conviction, the facts necessary to establish the guilt of the said Cecil Turnbull must be proved by competent evidence beyond a reasonable doubt, and the facts and circumstances proven should not only be consistent with the guilt of the accused, but inconsistent with any other reasonable hypothesis or conclusion than that of guilt to produce in your minds a moral certainty that the accused committed the offense; and if they fail to so establish the guilt of the accused, then you should acquit him."

The foregoing instruction was refused and proper exceptions saved, and the trial court failed to give an instruction on the question of circumstantial evidence as applied to the defendant Cecil Turnbull.

The prosecuting witness testified, in chief, that one of the men who robbed him and who threw the gun down on him was Cecil Turnbull. Further, prosecuting witness testified that about his only means of identifying Turnbull was by his size; that he couldn't swear positively about Turnbull; that he had seen him that afternoon, but had not spoken to him or heard him talk. In addition to the foregoing testimony of the prosecuting witness, the state introduced a number of circumstances tending strongly to connect defendant Turnbull with the commission of the crime.

In support of the contention that it was error for the trial court to refuse to give the foregoing instruction, it is argued that the direct evidence of the prosecuting witness, as to the identification of Turnbull, is so weak and unsatisfactory that,

unsupported by the circumstantial evidence in the case, it practically amounts to no incriminating evidence against Turnbull, and the court should have, for that reason, given the requested instruction.

The fact remains, however, that part of the evidence was direct and part circumstantial. This court has never held it to be reversible error to refuse to give instruction on circumstantial evidence unless the prosecution was based solely upon circumstantial evidence. Had the trial court instructed the jury that the evidence against Turnbull was wholly circumstantial, it would have been an incorrect statement; and, while the direct evidence as to his identification may not have been as positive and convincing as it was to the identity of the defendant John Rochel, yet the weight of this evidence was exclusively for the jury, and we do not concur in the view entertained by counsel for the defendant that the unconvincing nature of the direct evidence against Turnbull required the trial court to give an instruction on circumstantial evidence as to him. This was a joint trial and the evidence as to each of the defendants was to a considerable extent based upon circumstances. As we view it, it would have been unfair to the other defendants to have singled out either of the defendants and told the jury that as to him the evidence was wholly circumstantial.

It is also contended that the court erred in giving the following instruction:

"The defendants John Rochel and Cecil Turnbull contend as a part of their defense herein that they were not present at the time and place of the alleged robbery in question, and that they were at other and different places, and that therefore they could not have been and were not the parties who robbed the witness Simmons, if you find he was robbed. You are therefore charged that if you believe from the evidence that these two defendants were at other and different places than

the place of the alleged robbery at the time thereof, or if you have a reasonable doubt thereof, then and in that event you should find said defendants not guilty, and so say by your verdict.''

In support of this assignment the following argument is advanced:

"Instruction No. 7, heretofore quoted, was incorrect. The court was requested, as shown in the record at pages 299 and 300, to instruct the jury as to the alibi of Cecil Turnbull, and as to the alibi of John Rochel, and each one was entitled to a separate and distinct instruction on this proposition; or if combined, as the court attempted to do, then the jury should have been told that this applied to each of the said defendants.

"Under instruction No. 7 the first error we wish to call attention to is that the defendants are joined so that the jury was not advised that they could acquit Cecil Turnbull, if they had a reasonable doubt of his presence at the commission of the offense, and convict Rochel. Neither were they told that they could acquit Rochel and convict Turnbull; but the instruction states emphatically that they must be considered together, and if the alibi failed as to one, it failed as to both. This is the only conclusion you can reach after carefully reading paragraph 7 of the court's charge. They are referred to as 'they,' 'these two defendants,' and 'said defendants,' using the plural all the way through the instructions. This was done in the face of the fact that each of said defendants had requested a separate instruction. The injury done by this charge can readily be seen by reading the evidence of the defendant's witnesses, Grimes, McPherson, Ozmont, and Maxwell, all shown in this record, pages 194 to 223, inclusive. Of these witnesses every one was positive that Turnbull was in the drug store at the time Maxwell saw Walter Rochel and the prosecuting witness drive out of town. None of these witnesses named John Rochel as having been present at that time. However, the court's charge required the jury to find that John Rochel was

with Cecil Turnbull at that time and place, otherwise they could not acquit Cecil Turnbull.''

We think the instruction is not open to the criticism lodged against it. Apparently the court did not tell the jury that these two defendants claimed to have been together at another place at the time of the commission of the robbery, but ''that they were at other and different places.'' Neither the defendant John Rochel nor the defendant Cecil Turnbull took the witness stand in his own behalf. There is some evidence by three or four witnesses that Cecil Turnbull was in the town of Achille about 7 or 7:30 o'clock in the evening prior to the commission of the robbery, about three-quarters of a mile southeast of that town about 8 o'clock that evening. This is the only evidence on the question of alibi as to the defendant Turnbull. It was not such as to preclude his presence at the time and place of the robbery, neither was there any evidence of alibi as to John Rochel such as would preclude his presence at the time and place of the robbery. Walter Rochel, the other defendant, was in the automobile with the prosecuting witness at the time the robbery took place, and claims that he was also robbed. His testimony in many respects corroborates that of the prosecuting witness, especially as to the circumstances under which the robbery was committed; and, while he says that it was not Cecil Turnbull and John Rochel who robbed the prosecuting witness, he did admit on cross-examination that the two parties who held up the prosecuting witness answered the description of John Rochel and Cecil Turnbull as to height and general appearance. And the acts and conduct of the defendant Walter Rochel immediately before, at the time of, and immediately subsequent to the robbery were such as to convince an unprejudiced person that he had knowledge that the robbery was going to take place, and knew who would execute it.

Further, we believe it is apparent from a consideration of the court's instructions as a whole the jury could not have been misled into believing that the alleged alibi of Cecil Turnbull depended upon that of John Rochel, or vice versa, and that they could not acquit one of such defendants without acquitting the other, because, subsequently, the trial court in his general charge gave the following instruction:

"The defendants, and each of them, are presumed to be innocent until his guilt is established by the evidence beyond a reasonable doubt, and the burden is upon the state to so establish their guilt. If, therefore, after a careful consideration of all the evidence in the case you believe beyond a reasonable doubt that the defendants, or either of them, are guilty, then you should so say by your verdict, but if after such consideration of the evidence you entertain a reasonable doubt as to their guilt, or either of them, you should acquit him or them."

The instruction given on the subject of alibi was not such as to operate in a reversal of the judgment. Spess v. State, 20 Okla. 94, 201 Pac. 395. And the instructions as a whole were sufficient to inform the jury that they could acquit either of the defendants as to whom they might entertain a reasonable doubt.

If Walter Rochel was a conspirator in the commission of this robbery, and the jury so found by the verdict, and it is practically admitted in the brief of counsel for plaintiff in error that as to Walter Rochel and John Rochel the evidence is sufficient to convict, there can be no doubt but that a third party was also involved in it. The jury reached the conclusion from the evidence that this third person was Cecil Turnbull. We are impressed with the belief, from an impartial consideration of all the evidence in this case, that as to the guilt of Turnbull the jury reached the right conclusion. We find no error committed against either defendant sufficiently

prejudicial to authorize a reversal of the judgment, **and the same** is affirmed.

DOYLE, P. J., and BESSEY, J., concur.