## EARL STRONG v. STATE.

No. A-7048.   Opinion Filed Feb. 15, 1930.
(287 Pac. 1091.)

C. W. Myers, for plaintiff in error.

J. Berry King, Atty. Gen., for the State.

DAVENPORT, J.   The plaintiff in error, hereinafter referred to as the defendant, was jointly charged with James Parr and Aubrey Kelly, with the crime of robbery with firearms, was separately tried and convicted, and sentenced to be confined in the state penitentiary for a period of twenty-five years.   Defendant's motion for new trial was duly considered and overruled, and the case appealed to this court by case-made with petition in error attached.

The testimony on behalf of the state is as follows: J. C. Pointer testified, in substance, that:

"Ward McCann and I met Bill and Mildred Jones at the corner of First street and Robinson avenue, in Oklahoma City, about 9 o'clock the evening of October 7, 1927, and drove McCann's automobile a mile and a half east of the State Capitol on Twenty-Third street, and then turned south and drove about a half mile and stopped the automobile and turned out the lights; in about ten minutes another car with three men in it passed the car, and immediately after they passed they stopped the car and ordered us to get out at the point of a revolver, and took from me a billfold containing $12 and a wrist watch."

Witness stated the size of one of the men that participated in the robbery was about the size of the defendant, but he could not positively identify the defendant, Earl Strong, as being one of the robbers.

Ward McCann testified, in substance, the same as did J. C. Pointer; and stated what the robbers took from him. McCann identified Earl Strong as being one of the robbers. Billy Jones testified in substance the same as McCann and Pointer, and stated her sister Mildred was in New Mexico; she stated she could not identify Earl Strong as one of the men who robbed them. From the testimony contained in the record the only witness who attempted to identify Earl Strong was Ward McCann; all of the witnesses testifying it was dark and that the robbers used a flashlight.

The defendant offered as his defense an alibi. He called J. T. Nelson, who testified in substance that he owned a barber shop and confectionery in Packingtown; that he knew Earl Strong; that Earl Strong was at his place of business between 8 and 9 o'clock, October 7, 1927, the night it is alleged the robbery took place. Packingtown being in the southwest part of Oklahoma City, and the alleged robbery taking place about two miles east of the State Capitol.

Alvin Essary testified he saw Earl Strong between 8:30 and 9 o'clock on the night of the robbery in a confectionery in Packingtown. Frank Sakaley testified he saw Earl Strong at the drug store in Packingtown about 8 p. m., the evening of the alleged robbery. Harry Tralinger also testified that he saw Earl Strong in Packingtown, the night of the alleged robbery, about 8 o'clock that evening.

R. C. Strong, the father of the defendant, testified he was employed at Wilson & Company plant, in Oklahoma City; that he went to bed at 8:30 p. m. October 7, 1927; he got up at 9:45, and saw Earl Strong in bed in his room; he was up again at 11:30 and Earl was still in bed. John

Charron testified he took Earl Strong's sister home from the public library in Oklahoma City, reaching there about 10:30, and that he saw some one asleep where it is alleged Earl Strong slept. Elizabeth Strong, the nineteen year old sister of the defendant, testified that when she arrived home about 10:30 Earl Strong was asleep on a cot. Mollie Ballard also confirmed the testimony as to the time Elizabeth Strong and John Charron reached home.

The defendant in his own behalf denied having anything whatever to do with the robbery, and in detail told where he was the afternoon of the day of the alleged robbery at night up until the next morning, and stated he was at his father's home; that he had been in Packingtown all that evening up until the time he returned home and went to bed; he had visited with several parties in the confectionery and other places.

In support of a supplemental motion for a new trial, the testimony developed that on the night of the alleged robbery for which the defendant was charged, three men a short distance away from where this robbery took place held up and robbed the occupants of another car, and they found near where the robbery of this car took place some cards of Ward McCann and other papers that had been taken from him in the robbery for which this defendant was tried. It was brought out in the hearing of the supplemental motion that subsequent to the defendant's trial this testimony was used in the trial of James Parr and Aubrey Kelly, and they were acquitted by a jury. The defendant insists that he should have been granted a new trial, and in support of that has assigned ten errors alleged to have been committed in the trial of his case. The defendant urges that the court erred in overruling his objection to going to trial for the reason that a list of the witnesses who were to testify against him had not been

furnished him as required by law. An examination of the record shows the list of the witnesses called by the state to testify against him had been served upon him, the number of days prior to calling the case for trial as required by the statute, and that the only complaint of the defendant is that the street addresses given of some of the witnesses were not correct at the time the list was served on the defendant. The record further shows that all of these witnesses were used in the preliminary hearing, and that the defendant had knowledge of who the witnesses were and had ample opportunity and time to locate them. In Little v. State, 25 Okla. Cr. 190, 219 Pac. 424, this court in the first paragraph of the syllabus said:

"The omission of the post office addresses of certain witnesses for the state, on the list of witnesses for the state served on the defendant, is not vital, where the post office addresses are known to the defendant, and where each of the witnesses had testified; and been cross-examined at the preliminary trial."

It is next urged by the defendant that the court made unfair comments during the cross-examination of the witness Ward McCann which was prejudicial to the rights of the defendant and deprived him of a fair and impartial trial. We have examined the record and read the remarks made by the court in the taking of the testimony, and we do not think the remarks complained of by the defendant in any way whatever indicated to the jury the opinion of the court upon any fact brought out by the testimony in the case. All defendants, whether guilty or innocent, are entitled to have the facts determined by a jury without any intimation or comment from the trial judge. We fail to find in any of the remarks of the court anything that would indicate a disposition on the part of the court to be unfair, or that anything said by the court in any

way whatever tended to show his bias or prejudice in the case.

It is next contended by the defendant that the trial court erred in permitting the state to introduce certain evidence alleged to be prejudicial to the defendant. Said evidence complained of by the defendant being as follows:

"Q. I will ask you since that time if anyone has approached you with threats concerning your testimony in this lawsuit if you testified against Earl Strong and Aubrey Kelly and James Parr? A. Yes, sir.

"Q. I will ask you to state whether or not Mr. Mackey, the attorney in this case, called you to his law office in the past few days and talked to you concerning your testimony in this case? A. Yes, sir.

"Q. Are you afraid to testify against these boys? A. I am. * * *

"Q. That was not Earl Strong? A. No."

An examination of the record shows that no objections were made by the defendant to the questions complained of, and the answers of the witness to the same. The testimony, if objected to at the time by the defendant, would in all probability have been excluded by the court, as it was not admissible. However, if the defendant desires to preserve his record it is his duty to object to the questions when propounded to the witness, and if his objections are overruled and the witness allowed to answer the questions, then move to strike the questions and answers, and if his motion is denied, to save an exception, and not sit idly by and wait until after a conviction is had and then complain of the action of the trial court in admitting improper testimony.

It is next contended by the defendant that the trial court erred in sustaining certain objections to oral evi-

dence offered by the defendant, as to evidence given by certain witnesses in a former trial.

Before the testimony offered by the defendant could properly be admitted, it was the duty of the defendant to show that in the former trial of the case no record was kept of the testimony, and the subject sought to be inquired about was material to the issue of the case on trial. No effort was made by the defendant to show that the testimony offered and excluded by the court was material to the issue in this case, nor was there any testimony offered to show that in the case inquired about the testimony was not reported. We hold the court was correct in its ruling.

It is next urged by the defendant that the court erred in giving instruction No. 9, as to the law of an alibi. The question of a proper instruction upon the law, when the defense interposed is an alibi, has been before this court often. In Spess v. State, 20 Okla. Cr. 94, 201 Pac. 395, this court approved the instruction in form and substance the same as the instruction complained of in this case, citing Thompson v. State, 6 Okla. Cr. 50, 117 Pac. 216.

The holding of the court in Spess v. State, supra, conclusively settles the question as to the proper instructions upon the evidence of an alibi, and the trial court did not err in giving instruction No. 9 complained of by the defendant.

It is next contended by the defendant that the verdict is void and insufficient upon which to base a judgment of conviction. Section 2738, C. O. S. 1921, reads as follows:

"A general verdict upon a plea of not guilty, is either 'guilty,' or 'not guilty,' which imports a conviction or acquittal of the offense * * * it is either 'for the state,' or 'for the defendant.' When the defendant is acquitted on

the ground that he was insane at the time of the commission of the act charged, the verdict must be 'not guilty by reason of insanity.' When the defendant is acquitted on the ground of variance between the charge and the proof, the verdict must be 'not guilty by reason of variance between charge and proof'."

The verdict returned against the defendant in this case, omitting the caption, is as follows:

"We the jury drawn, empaneled and sworn in the above entitled cause, do upon our oath find the defendant guilty and fix his punishment at twenty-five years in the state penitentiary."

The defendant complains of the form of the verdict, and discusses the question of his not being present at the time the verdict was rendered, and the court not appointing any one to represent him. There is no charge that the jury did not return a verdict in form as set forth herein, nor is there any contention that the court in any way whatever interfered with the jury in returning its verdict. The contention of the defendant we think is without merit. This court at a very early date had this question before it in the case of Williams v. State, 11 Okla. Cr. 82, 142 Pac. 1181, 1182; the form of the verdict in that case being similar to the verdict in this case, and which verdict reads as follows:

"We, the jury, sworn and impaneled in the above entitled cause, do upon our oaths find the defendant guilty and assess his punishment at two years in state penitentiary."

The defendant in this case was advised of the charge against him, and the jury by its verdict showed that it was finding the defendant guilty of the charge. The verdict in this case is sufficient, although it is not in proper form. The counsel for the defendant knew the charge filed against

the defendant and the nature of the crime for which he was being tried. The verdict was sufficient to warrant the court in rendering judgment on the same, and sentencing the defendant to the penitentiary.

It is next urged by the defendant that the court erred in permitting the witness Morris to testify over his objection to certain statements made by the brother of the defendant in the presence of the witness. The conversation being as follows:

"Q. All right, I wish you would tell the jury just what the conversation was you heard there and the circumstances under which you heard it?

"Mr. Mackey: Just a moment. That was a conversation between the defendant—

"A. Earl Strong and his brother?

"Mr. Mackey: Earl Strong and his brother?

"A. Yes, sir.

"Mr. Mackey: To which the defendant Earl Strong objects as being incompetent, irrelevant and immaterial.

"The Court: Overruled.

"Mr. Mackey: Exception.

"A. When we was bringing the boys out of the office after we had them there for identification, the girls were up there; Earl's brother was at the head of the stairs waiting to see him as he came out. Earl asked me if he could see him and have him get some cigarettes for him. I told him he could. He walked over to him and said, 'Don't worry.' "

"Mr. Mackey: Who said that?

"A. His brother said, don't worry, we are framing an alibi for you. Earl told him to keep his mouth shut or keep your damn mouth shut, or something."

The defendant insists that this testimony was prejudicial for the reason that the defendant in the trial of the case offered as a defense an alibi. In Loudenback v. Territory, 19 Okla. 199, 91 Pac. 1030, 14 Ann. Cas. 988, the Supreme Court of the territory passed upon a similar question to the question raised here, and in the third paragraph of the syllabus said:

"A prosecution may on a trial show by the testimony of other witnesses a conversation between a defendant and another party; and it may prove the statements made by both the defendant (which are in the nature of admissions against his interests) and by the other party to the defendant. But it is for the jury to say, from all of the conversation, as to whether or not the statements made by the defendant are admissions against his interest."

The admission in this case of the statement of the brother of the defendant, and the defendant's reply, was not such an error as to warrant this court in reversing the case, and as the language used by the defendant in the conversation could only be interpreted to mean that he desired his brother not to discuss the case in the presence of the other parties, it should not be considered as a declaration against his interest, or prejudicial to his rights.

It is next contended by the defendant that he should be granted a new trial upon his supplemental motion on newly discovered evidence. This showing is not sufficient to warrant this court in reversing this case, as it is apparent from the record that if the defendant had used due diligence he could have learned what the testimony of the witnesses would be, as they had testified in the preliminary against the defendant when they were charged with robbing their car, which was alleged to have been robbed a short distance from where the car the defendant is alleged to have assisted in robbing. Several witnesses

testified in this case in support of the defendant, as to having seen the defendant in Packingtown on the evening of the alleged robbery, which was in the southwest part of Oklahoma City, and the robbery is alleged to have taken place east of Oklahoma City about a mile and a half from what is known as Twenty-Third Street road. The defendant was identified by only one witness. The credibility of the witnesses and the weight of the evidence was a question for the jury. It is apparent from the record that the defendant's previous record greatly influenced the jury in arriving at a verdict of guilty.

Where the jury hears the testimony and the instructions of the court, and has an opportunity to judge of the demeanor of the witnesses upon the stand, and arrive at a verdict of guilty, this court is not disposed to disturb the same. In this case the defendant, if guilty, was assisted by two other parties. The defendant says he was not guilty nor was he present. The instructions of the court correctly advised the jury as to the law. The penalty imposed in this case, when considered in light of all the facts and circumstances surrounding the same, is excessive, and we think the requirements of the law would be met by a modification of this sentence from twenty-five years to fifteen years, and as so modified the judgment is affirmed.

CHAPPELL, J., concurs.

EDWARDS, P. J., not participating.