# SPRADLING v. STATE.

No. A-11277.   March 7, 1951.

(229 P. 2d 212.)

W. C. Henneberry, Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

BRETT, J.   The plaintiff in error, Clay J. Spradling, defendant below, was charged by information in the court of common pleas of Tulsa county, Oklahoma, with the offense of the unlawful possession of intoxicating liquor in violation of Title 37, § 31, O.S.A. 1941.   The informa-

tion alleged in substance that on the 9th day of April, 1949, the defendant was in unlawful possession of a quantity of tax-paid liquor described therein as follows, to wit, ½ gallons of Paul Jones tax-paid whisky, 1 1/5 gallon of Ancient Age tax-paid whisky, 12 pints of Seagram 7 Crown tax-paid whisky, 6 pints of Hill & Hill tax-paid whisky, 5 pints of Sunny Brook tax-paid whisky, 2 pints of I. W. Harper tax-paid whisky and 1 pint of gin, tax-paid. The defendant was tried by a jury, convicted and his punishment fixed at 30 days in jail and a $100 fine, and judgment and sentence entered accordingly. From said judgment and sentence this appeal has been perfected.

The defendant raises but one contention herein. He complains that though he did not take the witness stand in his own behalf and make an issue of his character and reputation, the state was permitted to offer evidence in chief thereon in the direct examination of deputy sheriff Bradshaw. It appears that deputy sheriff Bradshaw was talking to the defendant following the raid of his premises, in which raid the hereinbefore described liquor was seized. This conversation took place near the automobile after the raid while the liquor was being loaded. It appears in the following proceedings had in the case:

"Q. Did you have any conversation with the defendant? A. Yes sir. Q. What was that conversation? A. Yes, I talked to him and he made the statement, he said 'If you had come out late this evening, you would not have found this much. You hit me with a pretty good stock on hand.' Q. Do you recall any further conversation? A. Nothing more than he said 'I was afraid you was going to hit me this time. I was afraid you was going to find plenty.' Mr. Henneberry: That is objected to for the reason it is incompetent, irrelevant and

immaterial, it is just a voluntary statement, and is prejudicial to the defendant, and we now move for a mistrial herein. The Court: I think you had better find out the circumstances under which this statement was made. I think it is improper at this time without further qualification. Sustained at this time. Mr. Henneberry: The defendant moves for a mistrial. The Court: The jury is instructed to disregard any statement made by the defendant to the officers thus far. Mr. Bicking: If the Court please it is all right to relate the conversation with defendant, which was done without objection. The Court: With reference to this conversation the circumstances should be related. The motion for mistrial is overruled. Mr. Henneberry: To which defendant excepts. The Court: Allowed. Q. Where were these statements made and these conversations had, Mr. Bradshaw? A. Most of them were standing out at the car, while we were loading the liquor into the car. Q. Everybody friendly? A. Yes, sir. Q. Was there any threats made to this defendant? A. No, sir. Q. What did you say to him that caused him to make those statements to you? A. Nothing, we were just talking more or less, just carrying on a conversation, neither said anything in particular, just carrying on a conversation, just an ordinary conversation. Q. Was he under arrest at that time? A. Yes, sir. Q. And were you questioning him at all, at that time? A. No, sir, we were not. Q. And that statement those statements were made voluntarily? A. That's right, yes sir. Q. Can you relate to the jury the substance of what you said to the defendant and what the defendant said to you? A. Well, we were talking along the lines and I told him 'well we got pretty good luck this time', and he said 'yes', and that's when he said 'if it was a little later this evening you would not have got that much.' Q. Anything further said there? A. And he said 'you hit me when I had a pretty good supply of stuff'. And in the matter of the course of the conversation he said 'I was afraid at this time that you was going to find my plant', *because we had missed it several times*. Mr. Henneberry: Now we move for a mistrial. The Court: These

admissions, these voluntary statements were not made under duress, they were voluntary. Mr. Henneberry: No, you miss the point. The Court: That was a voluntary statement. The motion for mistrial is overruled. Mr. Henneberry: The defendant now moves the Court to instruct the jury to not consider the last statement of this witness. The Court: Overruled. Mr. Henneberry: To which defendant excepts. The Court: Exception allowed."

The defendant contends that such evidence was in violation of the rule that the character of the defendant cannot be impeached or attacked by the state unless he puts his character in issue by introducing evidence of good character. Edwards v. State, 90 Okla. Cr. 211, 212 P. 2d 150; also Edwards v. State, 85 Okla. Cr. 125, 186 P. 2d 333; Worley v. State, 32 Okla. Cr. 1, 239 P. 683; Pitcher v. State, 32 Okla. Cr. 322, 241 P. 199; Scott v. State, 48 Okla. Cr. 7, 288 P. 999; Cline v. State, 57 Okla. Cr. 206, 47 P. 2d 191, all to the same effect. More particularly he contends that the foregoing evidence sworn to by deputy sheriff Bradshaw put in issue the fact that the defendant had been arrested and his place searched on prior occasions, all of which he contends was incompetent and prejudicial to his rights. The foregoing cases relied on by the defendant do not support his contention. All the cases cited and quoted are in no way factually in point herein. Here we are confronted primarily with the voluntary admissions against interest constituting a part of the res gestae while in the cases referred to no such situation was there involved. Therein was a direct attempt to impeach the defendant's character and reputation not as an admission against interest or part of the res gestae incident to a lawful search and seizure. (Herein the search and seizure was by a valid warrant duly and legally served.) Statements in the nature of

admissions against interest are clearly admissible. In Jackson v. State, 29 Okla. Cr. 429, 234 P. 228, this court said:

"Any statement of the defendant, relative to the offense for which he is being tried, is admissible."

In Strong v. State, 46 Okla. Cr. 167, 287 P. 1091, 1092, this court said:

"The state may show by testimony of other witnesses a conversation between a defendant and another party, and it may prove statements made by both the defendant (which are in the nature of an admission against his interest) and by the other party or defendant, but it is for the jury to say from all the conversation whether or not the statement made by the defendant is admissions against his interest."

In Jones v. State, 77 Okla. Cr. 285, 141 P. 2d 109, 110, this court said:

"Statements made by a defendant to another, which are against his interest, were admissible in evidence if voluntarily made. The weight to be given this testimony is for the consideration of the jury taking into consideration all of the facts and circumstances in the case."

The record herein discloses that the admissions against interest were made voluntarily and therefore the evidence relative thereto was clearly admissible. Moreover, it was admissible as res gestae. In Goodner v. State, 32 Okla. Cr. 192, 239 P. 928, 930, it was said:

"It is a well-settled rule that statements made by a defendant, so closely with the commission of the offense charged as to be considered a part of the res gestae, are admissible."

However, the evidence of deputy sheriff Bradshaw did not end with mere admissions against interest. He threw in the clause "We had missed it (Spradling's plant)

several times". This testimony was certainly incompetent and improperly admitted and defendant's objections to that portion of the state's evidence by deputy sheriff Bradshaw should have been sustained. But in light of the entire record, the large quantity of whisky herein involved and the unquestioned guilt of the defendant, we do not believe this error warrants a reversal of the conviction, as was said in Cotter v. State, 74 Okla. Cr. 304, 125 P. 2d 777:

"It is not error alone that reverses judgments of conviction of crime in this state, but error plus injury, and the burden is upon the plaintiff in error to establish to this court the fact that he was prejudiced in his substantial rights by the commission of error.

"Appellate court will not reverse for rulings on evidence on trial errors unless record discloses miscarriage of justice, or that errors substantially violate constitutional or statutory rights."

Moreover, applying the harmless error statute, Title 22, § 1068, O.S.A. 1941, as was said in Janeway v. State, 62 Okla. Cr. 264, 71 P. 2d 130, 131:

"Under the harmless error doctrine, which has been firmly established by this court in construing the statutes of this state, where the guilt of defendant is clearly established, and there is no reason to believe that on a second trial an intelligent and honest jury could or reasonably would arrive at any other verdict than that of guilty, a new trial will not be granted except for fundamental errors."

For all the above and foregoing reasons the judgment and sentence herein imposed is accordingly affirmed.

JONES, P. J., and POWELL, J., concur.