## KENT GOODNER et al. v. STATE.

No. A-5195.   Opinion Filed Oct. 9, 1925.
Rehearing Denied Oct. 30, 1925.
(239 Pac. 928.)

W. L. Coffey, for plaintiffs in error.

George F. Short, Atty. Gen., and Fred Hansen, Asst. Atty. Gen., for the State.

DOYLE, J.   The information in this case charged that in Tulsa county, October 9, 1923, L. C. Hinze, F. E. Williams, Bob Fleanor, Kent Goodner, A. C. Calvert, Clarence Smith, and F. J. Schultz did unlawfully convey and transport certain intoxicating liquor, to wit, 25 gallons of corn whisky, from the city hall building in Sand Springs to a place unknown in Tulsa county.   Before the case was called for trial, the defendant L. C. Hinze, mayor of Sand Springs, was granted a severance.   At the close of the evidence for the state, the defendants interposed a demurrer to the evidence, and each moved for a directed verdict of acquittal, which demurrer was sustained as to the defendants F. E. Williams, chief of police, and Bob Fleanor, assistant chief of police, of Sand Springs, and overruled as to the other defendants.

The trial proceeded, and the jury returned verdicts finding the defendant Kent Goodner guilty, and fixing his

punishment at a fine of $250 and imprisonment in the county jail for 3 months; finding the defendant A. C. Calvert guilty, and fixing his punishment at a fine of $50 and imprisonment in the county jail for 30 days; finding the defendant Clarence Smith guilty, and fixing his punishment at a fine of $500 and imprisonment in the county jail for 6 months; and finding the defendant F. J. Schultz guilty, and fixing his punishment at a fine of $500 and imprisonment in the county jail for 6 months. Motions for new trial were overruled. From the judgments rendered in accordance with the verdicts on March 6, 1924, the defendants appealed.

The errors assigned question the sufficiency of the evidence to sustain a conviction, and that the court erred in admitting incompetent evidence and in overruling the motions for a new trial.

The undisputed facts are that on the night of October 9, 1923, about 11:30, Charles Crawford, a Sand Springs traffic officer, found a Ford car, about four blocks from the city hall in said city, in which he found a 15-gallon keg and two 5-gallon water bottles, all apparently full of whisky. The car was taken to the city hall and padlocked. The keg and water bottles were removed from the car and taken into the city hall, and deposited in a vault; within an hour the keg and bottles were removed from the vault in the city hall and transported to some place unknown.

Officer Crawford testified that the Ford car had been abandoned by two men that he did not recognize; that he called the city hall for officers, and Williams, Fleanor, and Goodner came after the car and took it to the city hall; that, after the keg and bottles were carried into the city hall, he had nothing further to do with the car or the whisky; that he saw L. C. Hinze, mayor of Sand Springs, there at the city hall, and about 12 o'clock he carried him home in the side car of his motorcycle.

Sam Jeter testified: That he was merchant police and night watch in Sand Springs on the night of October 9th, and saw the automobile with the contents brought to the city hall, where the car was locked with a chain and ball, at the curb; then a 15-gallon keg and two 5-gallon water bottles were taken therefrom by officers Goodner, Crawford, and Calvert and placed in a vault inside the city hall. That he smelled the contents of the bottles and they contained whisky. That he tasted the contents of the keg and it was whisky. That the defendant Schultz came to him and asked where the mayor lived, and he told him on Fifth street, between Main and Garfield. Schultz said he had to get the car, and he told him the car was under confiscation, and Schultz said: "That's what I want to see Mayor Hinze about; if I can see him I can get the car." That Schultz left in a car, and in a very short time came back with the mayor. That the mayor called Officers Goodner and Calvert and told them to turn this whisky over. The mayor then got in the side car of Crawford's motorcyle and went north. That the defendant Clarence Smith then said to him: "You go on around to Main street. I want to get that whisky, and they are scared as hell of you." That witness said, "All right," and started off, but stopped across the street, and there he saw Calvert, who was desk sergeant, unlock the vault. Then Clarence Smith, F. J. Schultz, and Kent Goodner removed the whisky and put it in a Ford roadster. Then Smith drove south with the whisky, and Schultz followed him in the Ford car that had been locked with the ball and chain. That later he saw Smith driving the same Ford car around Sand Springs.

L. J. Lampkins testified that about midnight that night the defendant Schultz came into Stanton's restaurant and asked him where the mayor lived, and he directed him to where he could find him.

Clyde D. Damf testified that he was at work that night

in the office across from the council room, and Officer Crawford came to the door and said: "Mr. Damf, come and see what a haul I made." And he went into the council room, where the vault was, and they were putting some bottles that contained whisky and a keg in the vault. Then he went to the Stanton lunch, and returned within an hour. That when he came back some one was carrying a glass bottle around the corner of the city hall, but could not say who it was.

As a witness in his behalf, A. C. Calvert testified that he was fire chief and truck driver, and was also acting as desk sergeant at the time under instruction of the city commissioners; that Traffic Officer Crawford, Bob Fleanor, and Kent Goodner brought to the city hall the 15-gallon keg and 2-gallon glass jugs, all supposed to contain liquor, and they placed it in the vault; then he closed the door and locked it; that he had nothing whatsoever to do with the taking, if it was removed from the vault; that on the following morning the vessels were gone.

As a witness in his own behalf, Kent Goodner testified that he was police officer; that, after he had assisted in carrying the vessels into the commission room, he never saw them any more.

The defendant Clarence Smith testified that he was running a rooming house in Sand Springs, and was owner of two Ford roadsters and a Nash; that neither of the cars in front of the city hall that evening was his; that the defendant Schultz lived at his place; that he saw Mayor Hinze standing in front of the city hall that night, but did not speak to him, but in walking around there did speak to Sam Jeter; that he did not handle any whisky that night, and did not know anything about any whisky, only what he heard.

As a witness in his own behalf, F. J. Schultz testified

that when in Sand Springs he lives with his brother-in-law, Clarence Smith; that he came from Tulsa to Sand Springs that night about 11:30, and, passing Sam Jeter near the post office, he spoke to him, and then went on; that he did not ask him where Mayor Hinze lived and did not know anything about any liquor having been seized that night; that he had nothing to do with transporting any liquor on that occasion.

Fred Gantz, a witness for the defense, testified to a conversation occurring with the witness Jeter somewhat contradictory of the testimony given on the trial.

It is obvious that the case was one for the consideration of the jury, and we are unable, after a careful examination, to find anything in the record sufficient to create a reasonable doubt as to the correctness of the result.

It is urged that all the testimony as to Mayor Hinze, and as to his being about the city hall, was incompetent and highly prejudicial to the rights of these defendants, in that Mayor Hinze was not upon trial at that time, and that all testimony relative to Mayor Hinze should have been excluded. It is a well-settled rule that statements made by a defendant, so closely with the commission of the offense charged as to be considered a part of the res gestæ, are admissible. Under this rule the objections made were properly overruled.

The other assignments of error are not argued in the brief, nor sustained by the record, and need not therefore be noticed. Upon a consideration of the whole record, we are satisfied that the defendants had a fair and impartial trial, and under the facts and the law we cannot say that the punishment imposed was excessive.

The judgments appealed from herein are accordingly affirmed.

BESSEY, P. J., and EDWARDS, J., concur.