EARNEST GATHER WALKER v. STATE.

No. A-10997.    June 1, 1949.

(207 P. 2d 341.)

Hughes & Hughes, of Hobart, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

BRETT, J. This is an appeal by Earnest Gather Walker, defendant below, from a judgment and sentence by the county court of Kiowa county, Okla., wherein he was charged, tried and convicted by a jury of the crime of driving an automobile while under the influence of intoxicating liquor. On the verdict the court imposed judgment and sentence of a fine of $100.

The defendant contends the evidence is wholly insufficient to sustain the conviction, judgment and sentence. The state's case shows by the testimony of Highway Patrolmen C. O. Dawson and Fred Henry that the defendant drove his car while intoxicated; that at the time of his arrest the defendant was thick of speech, staggery and had a strong whisky smell on his breath. It further shows, when he was approached by the officers he said "Hello, sweetheart," and tried to pat them; that he was happy drunk. Officer Henry said that he had known him for about a year, that he had talked to him before on quite a few occasions, that he was a pretty good boy, but on this occasion every time he said anything to the officers he would preface it with the remark

"sweetheart." The evidence further shows that there was a lady passenger in the car who was drunk, that she pleaded guilty to being drunk. Moreover, it was to the effect that there was a strong odor of whisky in the car and that there was a pint bottle of Old Fitzgerald about three-fourths full on the seat between the defendant and the drunken woman with him. They saw the defendant back out in a reckless manner and almost hit vehicles parked on the south side of the street before he got his car straightened up. This attracted their attention and they followed him. He was driving at 25 or 30 miles an hour; that when he came to the stop-sign at Main and Third streets he hit his brakes and kept going on across. They continued to follow him to a point south of the courthouse where he stopped his automobile. There they observed him in the hereinbefore mentioned condition and put him under arrest. The only weakness of the state's case was the testimony of Tom Hood, jailor and deputy sheriff, who booked and jailed Walker. Hood testified he walked straight enough, that he could smell whisky but said he didn't smell it on the defendant Walker's breath. He said he would not say he was staggery drunk. This evidence was good as against a demurrer, and was sufficient to go to the jury.

The evidence of the defendant, Walker, was a flat denial of his intoxication, coupled with the admission that he had had one drink of whisky out of a bottle while attending the Elks dance; that he was perfectly sober when he left the dance hall. He said the dance was being conducted for the Woodward cyclone victims. He said he had sold some tickets and that he had some money which he had collected; that he waited until after the dance to turn in the money. This he did he said because he was interested in knowing how much money

was taken in for this relief project. He admitted the lady passenger was drunk but contended that a man by the name of Bob Glasscock and the woman and some others were in the car while he was upstairs in the dance hall checking in his money. He contended he did not know they were in the automobile until he came downstairs and found them there. He testified he did not want to put the lady out in the street drunk and he drove down to Glasscock's car south across from the courthouse. Here he was arrested. He disclaimed ownership of the whisky and said he did not know how it got there.

Several people, friends of the defendant who attended the dance, testified in behalf of the defendant. Bob Glasscock testified he did not know how the whisky got in the car. He said it was apparently left by some of those in the car who were drinking there before Walker came down from the dance. He said the girl was too drunk to go down the street. He denied he was under the influence of liquor. In any event the officers did not arrest or book him for being drunk. Glasscock testified that Walker was not drunk and he corroborated Walker's statement to the effect that he drove the drunken girl down to Glasscock's car. In addition thereto, Glasscock testified he was going to take her to her home in Mountain Park. He said they slowed down for the stop sign at Main and Third. He said he did not notice anything unusual about Walker's driving; that Walker drove about 15 miles an hour. He said he did not remember hearing any of the conversation that took place out there between Walker and the officers when Walker was arrested, that Walker did not put up any argument. He didn't remember him slapping the officers on the back and calling them "sweetheart," he would not say that didn't happen, he just said he did not hear it but that it

could have happened and he would not have heard it. Witnesses A. C. Pillow, Jim Eberhart, Fay Watkins and his wife, and Doyle Baumberger all testified they attended the dance and that defendant, Walker, was sober. Mrs. John Fox, Jr., said she danced with Walker, that his actions would not indicate that he was intoxicated, that she remember they checked up on the receipts and Walker was there and he was perfectly sober.

Roy McGehee, deputy sheriff of Kiowa county, testified he was just leaving the jail when they came up with Walker, Glasscock and the drunken woman. They were being brought in just as he was going out of the jail and he knew Earnest Walker and saw him and from what he saw he could not detect whether he was drunk or sober, that he saw nothing which would indicate that he was under the influence of intoxicating liquor. As a matter of fact, he did not pay any attention at all as to whether Walker was drunk or sober and for that reason he would not say whether he was drunk or sober.

From the foregoing digest of the testimony it is apparent there is a sharp conflict in the testimony of the officers who made the arrest, and the defendant and his friends. The evidence both for the state and the defendant is substantial. This court has repeatedly held before it will interfere with the jury's verdict on the ground that the evidence was insufficient to sustain the conviction, there must be no competent evidence in the record on which the verdict could be based. Rogers v. State, 85 Okla. Cr. 116, 185 P. 2d 927; Rule v. State, 84 Okla. Cr. 347, 182 P. 2d 525; Ritter v. State, 84 Okla. Cr. 418, 183 P. 2d 257, and in Chapman v. State, 84 Okla. Cr. 41, 178 P. 2d 638, 639, wherein it was said:

"Where the evidence is conflicting and different inferences may be drawn therefrom, it is the province of the jury to weigh the same and determine the facts."

To the same effect see Brown v. State, 81 Okla. Cr. 314, 164 P. 2d 401. And Roberts v. State, 82 Okla. Cr. 75, 166 P. 2d 111, 112, wherein we said:

"The function of this court is limited to ascertaining whether there is a basis in the evidence on which the jury can reasonably conclude that accused is guilty as charged."

In the case at bar the evidence was substantial though conflicting, and it was the jury's province to weigh the same. Where such is the situation we have no authority to interfere with the jury's verdict and the judgment and sentence. For the foregoing reasons the judgment and sentence herein imposed is accordingly affirmed.

JONES, P. J., and BAREFOOT, J., concur.