**Paul T. RUNYON, Plaintiff in Error,**

v.

**The STATE of Oklahoma, Defendant in Error.**

**No. A–12360.**

Criminal Court of Appeals of Oklahoma.

Nov. 21, 1956.

A. W. Mauldin, Duncan, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., James P. Garrett, Asst. Atty. Gen., for defendant in error.

POWELL, Judge.

The plaintiff in error, Paul T. Runyon, was charged in the county court of Stephens county with the offense of operating a motor vehicle upon the public highway while under the influence of intoxicating liquor; was tried before a jury which returned a verdict of guilty, and fixed punishment to be a fine of $50, and ten days confinement in the county jail.

For reversal three propositions are advanced: (1) That the verdict was not supported by competent evidence; (2) That the trial court erred in admitting evidence; and (3) That the county attorney was guilty of misconduct in questioning witnesses. Counsel argues these propositions together.

The State contends that the appeal should be dismissed, and such contention is not without substantial merit. However, we prefer, where possible, to dispose of cases on their merits.

The evidence discloses that the defendant, his wife and three small children left the town of Dotson, Texas shortly after noon on November 23, 1955. They stopped in Lawton at the home of Wiley Camp about 5 P.M., and left at 5:20, leaving with him their two smaller children. They drove east of Lawton on Highway No. 7 towards Highway No. 81, and about 2.2 miles west of the intersection the defendant, who was driving, ran the car into the bar ditch at about 6 P.M. They sat in the car for about two hours, and some boys came by and took defendant to Marlow, the nearest town, for the purpose of getting a wrecker. Two highway patrolmen driving west saw the car with the front wheels in the ditch and the rear wheels off the ground. They stopped to see if they

could be of assistance. Mrs. Runyon was in the car with the boy, and declined any help, advising the officers that her husband had gone to Marlow for a wrecker. The officers drove on to the county line, turned and went back. Shortly before reaching the Runyon car they received a report over their radio to investigate a Plymouth car that was in a ditch just west of the "Y", that the police at Marlow had the driver in the Marlow city jail. The officers stopped at the car and picked up the wife and son of the defendant and took them in to Marlow.

James Otis Smith, a policeman at Marlow, testified that he received a report that a man who had run his car into a ditch out on the highway had been brought to town by another man, who had let the driver of the ditched car out at Crousen's beer tavern, and that the man was already intoxicated. At the time he received the report, witness was sitting in the police car half a block from Crousen's and immediately walked to the bar and found defendant, who "had blood on his face and looked like he had been in a wreck or something", and defendant had a bottle of beer about one-third gone in front of him. This witness testified: "I asked him if he was the man that had run his car into the ditch out on No. 7 highway, and he said he was. I asked him to come and go with me, and we walked out and he was pretty staggery and was under the influence of alcohol." The officer took the defendant to the city jail, and defendant called a wrecker to go after his car, but the wrecker service would not make the trip without authority from the highway patrol. Witness called the patrol and asked them to send a wrecker out for the car. He testified that the highway patrol officers came to the jail and gave defendant an intoximeter test. He further testified:

"Q. Did you have any further conversation with this defendant concerning the automobile out there on the road? A. He said he was driving it, that he drove it off in the ditch, and he told me that him and his wife had

been fighting was how come him to run it in the ditch."

Paul O. Scott, highway patrolman, testified relative to seeing the car on the highway, and the defendant at the Marlow city hall, that he was drunk, and with defendant's consent patrolman Bill Grimes administered the intoximeter test to him.

Bill Grimes corroborated patrolman Scott in every particular, and explained in detail the manner in which the intoximeter test was given. He first saw defendant in the jail at Marlow, and testified that he went with policeman Red McCorley to the jail to talk with defendant. Said he:

"I asked him if he was the driver of the car, if that was his car out there with the New Mexico tag on it, and he said it was, and I asked him if he was driving the car at the time.

"Q. At the time of the accident? A. Yes, sir, He said it was, and I asked him what he had been drinking and how much, and he said he had been drinking beer and he didn't say how much. I asked him if he had any beer since then, if he had drank anything since then, and he said he had not. I asked him what caused him to run into the ditch and he said he and his wife were having trouble, and that he drove off into the ditch."

There was a stipulation that the intoximeter test was transmitted to P. L. Wood of the Department of Public Safety of the State Crime Bureau, and that it showed 18 per cent alcohol.

Wiley Camp testified for the defendant and said that Mr. Runyon had come to his home in Lawton about 5 P.M., and left about 5:20; that the defendant did not drink while there and had not been drinking as far as he could tell. That he had known defendant for some time, and thought he would have become aware of it if defendant had been drinking, even as much as one bottle of beer.

W. S. Crousen, operator of the beer tavern, testified that the defendant came to his place just after 9 o'clock and asked

him to call the wrecker service, but that he was busy trying to fix a shuffle board machine, and that defendant kept following him around for over an hour asking him to telephone for the wrecker, claiming that he could not hear over the telephone "with that music box going". He testified that defendant drank five or six or maybe seven bottles of beer while in his place of business. He did not think defendant was drunk, but stated: "Well he acted all right when he come in there, he acted like he was sobering up and when he come in there he wanted to attend to business." That defendant remained there an hour or an hour and a half.

Defendant testified: "I ran my car off the road out here west of the 'Y' and went in to get a wrecker"; that he got in the ditch about 6:30 P.M. and got into Marlow a little after 9:15; that he went to the Ford Garage for the wrecker but it was closed, and he went next door to Crousen's beer tavern to get him to telephone for him, stayed in the tavern an hour to an hour and a half, and drank five or six or maybe seven bottles of beer, and that the policeman took a bottle out of his hand when he arrested him. He testified that he was driving the car east on the highway and met a truck with bright lights, and went into the ditch and was afraid to try to back out, afraid he would turn the car over. He testified that he had not drunk anything before reaching Marlow, and that "sometimes one bottle [of beer] will make me intoxicated. I have got a bad stomach and sometimes it hits me all at once."

Mrs. Runyon corroborated her husband up to the time he left for Marlow; stated that she had been with him all day up to that time and that he had not had a drink, and that he was driving the car when he ran into the ditch. She denied that the patrolmen stopped at her car as they went west, but stated that they stopped as they were going east, and she and her son rode into Marlow with them.

Patrolman Scott was recalled as a rebuttal witness. He testified that defendant's wife had told him during the ride from the scene of the accident to the jail that defendant had been drinking when he ran the car into the ditch. Recalled, Mrs. Runyon stated that she did not recall this conversation.

 In the within case there was a strong conflict in the evidence. Mildly stating the matter, it is evident that some persons were testifying falsely. It was the function of the jury to determine the issue—whether the defendant was intoxicated while driving his Plymouth sedan on State Highway No. 7, prior to leaving it in the ditch and going to Marlow for a wrecker. The patrolmen said that defendant's wife told them her husband had been drinking. She denied that when she testified. The jury decided the issue in favor of the State, and there was sufficient circumstantial evidence to sustain the jury's conclusion. The defendant admitted that he was driving at the time he got in the ditch, and he was corroborated in this by his wife. They accounted for the accident by reason of bright lights of another vehicle. The car was in the ditch with the rear wheels off the ground; the tavern keeper testified that defendant "acted like he was sobering up" when he came into the tavern; his face was scratched, cut and bloody and he was drunk when arrested, and told the officers he was fighting with his wife when the accident occurred. The jury had for consideration the testimony of defendant's own witness, Crousen, the tavern owner, that when defendant came in he acted like he was sobering up. On the other hand there was witness Camp's testimony that at 5 o'clock defendant was not drunk. This court is committed to the rule that where the evidence is conflicting and different inferences may be drawn therefrom, it is the province of the jury to weigh the evidence and determine the facts, and the function of this court is limited to ascertaining whether there is a basis in the evidence, on which the jury

can reasonably conclude that accused is guilty as charged. Henderson v. State, 95 Okl.Cr. 342, 246 P.2d 393; Toms v. State, 95 Okl.Cr. 60, 239 P.2d 812.

Defendant asserts that the trial court erred in permitting the introduction of evidence. This proposition seems to be aimed at the stipulation between the State and the defendant, reading as follows:

"Mr. Dennis [county attorney]: at this time it is stipulated between the State of Oklahoma and the defendant Paul Runyon, by his attorney A. M. Mauldin, that State's Exhibit One, was sent to P. L. Wood, Oklahoma City, Oklahoma, who is a chemist employed by the State Department of Public Safety, and that State's Exhibit One was processed and analyzed in accordance with the directions prescribed by the manufacturer of State's Exhibit One, an intoximeter, and that the results of said analysis showed that the blood alcoholic content of this test was—of the party taking this test—was .18 per cent by weight, and that Mr. Wood would so testify if he were present as an expert witness. And that he would further testify that the American Medical Association and the American Bar Association have adopted a standard which states that whenever the blood alcohol content of any person reaches .15 per cent by weight that that party or person is definitely under the influence of intoxicating liquor for all purposes.

"Mr. Mauldin: Comes now the defendant Paul Runyon and objects to the competency of the witness, the testimony introduced by the county attorney as the testimony of P. L. Wood.

"The Court: Objection will be overruled."

We are at a loss in discovering the basis for the complaint in view of the stipulation. In his brief defendant urges that an expert witness can only qualify by answering questions propounded to him as to his qualifications. Ordinarily this is of course correct. But the parties may agree to his qualifications, which is very often the case though the witness may be present in the court room. This is to save time when counsel is well aware that the witness is eminently qualified and that a long line of questioning as a practical matter is just a waste of time and adding to the expense.

We find no merit in this proposition, or the further proposition that the county attorney was guilty of misconduct in questioning witnesses. Such assertion in the brief without pointing out the specific instance with citation of authority in support will not be considered.

Finding no reversible error, the judgment appealed from is affirmed.

JONES, P. J., and BRETT, J., concur.