Marion Henry BRUTON, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–12380.

Criminal Court of Appeals of Oklahoma.

Jan. 9, 1957.

Gordon L. Patten, Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

POWELL, Judge.

On February 3, 1956 an information was filed in the district court of Tulsa County charging Betty Lois Hayes, Marion Henry Bruton and Willie Madison, conjointly and while acting in concert with each other, with effecting the death of Ernest Riley on January 24, 1956, by stabbing him with pocket knives.

Plaintiff in error, Bruton, hereinafter referred to as defendant, asked for and was granted a severance, and was tried separately.

The jury found defendant guilty of the included crime of manslaughter in the first degree, and being unable to agree upon the punishment to be assessed, left that to the court, who fixed the penalty at confinement in the state penitentiary for a period of 50 years.

It is noted that the defendant did not testify, and offered no evidence.

For reversal it is first argued that the court erred in overruling defendant's demurrer to the evidence.

Bernice Riley testified that she was the surviving wife of Ernest Riley; that she had lived with him one year and nine months prior to his death as his common law wife; that on the evening of January 23 and early morning of January 24, 1956 she was with her husband at Jack Crutcher's place in the 500 block North Greenwood, in Tulsa. It was a place where food might be bought and juke-box music played. She termed the place a "joint". Beer could be obtained legally nearby, and whiskey would be brought in illegally. Her hus-

band had beeen drinking on the dates mentioned. She saw all the defendants in the place in question. Bruton was known as "Brutus" and as "Biscuit". She said that while she was in the back room at Crutcher's a fight started between her husband, Betty Lois Hayes, the defendant Bruton and Willie Madison. All parties were Negroes. She did not see any knives displayed while the parties were inside the cafe. Crutcher, the proprietor, ordered all persons outside, and the deceased told witness to come on out of the place. She said that after they got outside she saw Madison with a knife; that her husband was "in front" and was "backing back"; that Madison and the defendant caught hold of her husband and in the struggle her husband's jacket and shirt came off. That Lois Hayes was also fighting him, and her husband tried to run away and the defendant pursued him and her husband fell to the ground in Greenwood Street, and the defendant "stomped" and kicked him. That when she reached her husband he was bloody and gasping for breath, and she was unable to get him to answer her.

J. B. Grayson testified that he knew Ernest Riley during his lifetime and was present at Jack Crutcher's place in Tulsa late at night on January 23 and the early morning of January 24, 1956, and witnessed a disturbance. He said the defendant Bruton and Willie Madison were wrestling with Ernest Riley, and Crutcher made everyone get out of the place. He was asked what happened on the outside. Said he: "Willie Madison and Marion Bruton caught this boy by the coat collar and told him he had better make it, and he didn't want to run and Betty Hayes swung at him with a knife." He said that Riley was trying to pull away and witness went next door and pulled a board off a porch and he swung the board back at the girl and made her stay away from Riley, and then Riley started running down Greenwood Street and Bruton ran after him for about half a block and caught up with him. Witness ran on down to where Riley was on the ground by a station wagon, and the de-

fendant Bruton was kicking him. That Bruton turned and said: "He [Riley] got what he deserved"; and walked off.

On cross-examination witness said that when defendant caught up with Riley "when they went together is when he fell". Witness did not observe a knife in the hand of anyone except the woman, Betty Hayes.

William Blakeley testified that he lived at 348 North Greenwood, Tulsa, and was acquainted with Ernest Riley; that in the early morning of January 24, 1956 he saw Riley. Witness said he had just gotten out of his car and started on to his porch and saw someone fall back of a station wagon, and he observed the defendant Bruton kicking the fallen man, and witness went over to where the victim was and the defendant started to run up the street. He noticed blood on Riley, the victim, and tried to talk to him but could get no answer. Witness did not observe any knives or weapons in the hand of anyone.

Harold White testified that on the early morning of January 24, 1956 he was driving in the 500 block of North Greenwood in Tulsa and observed two men and a woman fighting with Riley in the middle of the street. That Riley was backing up, that they backed him "over a car" and the girl cut at him, and he broke loose from the two men who were holding him, one of whom he identified as the defendant, and that one Grayson appeared with a board and hit at the girl who had a knife and Riley got loose and yelled to his wife, "Come on Bernice, come on Bernice", and ran, and the last witness saw was the defendant Bruton running after him.

Officer James Wimberly testified that on the morning of January 24, 1956 he was called to the 500 block of North Greenwood, and found one Ernest Riley lying in the street about ten feet north of the intersection of Greenwood and Easton Streets. That Riley was bleeding badly from wounds in his chest, was gasping for breath and was unable to talk. That witness sent for an ambulance, learned from bystanders a description of the persons whom Riley had been fighting with, and called for other of-

ficers to locate the other parties and make arrests. That officers Sanders and Sawyers responded to the call. He stayed with Riley, awaiting the ambulance.

Officer Frank Sawyers testified that in the late hours of the night of January 23, 1956 he received a call to come to a point on North Greenwood Street, Tulsa, and there saw officer Wimberly who gave him the description of suspects, and he later found the defendant Bruton and arrested him, searched him and found a pocket knife on him. That defendant had blood on his hands and clothing. He did not notice blood on the knife. He said that defendant had a small cut on his forehead. That he saw one Betty Lois Hayes about 50 feet from Bruton, and that he also arrested her and found a knife in one of her hands. Witness said that officer Sanders took charge of the woman and he took the defendant in his car, and both cars proceeded to the place where the victim was lying in the street, and then the suspects were taken to the police station.

Officer Sanders testified that there was blood on the knife taken from the Hayes woman, and that she had blood on her hands.

Officer Leon Johnson said that he arrested one Willie Madison about 1:30 the morning of January 24, 1956. He found him up in his room with a woman and his overcoat was on the floor, and in one of the pockets of the overcoat he found an open knife. He saw no blood on Madison's person, but did find a bloody towel in his room. The knife and towel were admitted into evidence.

There was next admitted into evidence, after proper identification, a picture of the deceased, Riley, made at the Hillcrest Hospital, showing two stab wounds in his chest. It was stipulated that if Dr. Leibovitz were present that he would testify that on January 24, 1956 he examined the body of Ernest Riley and that he determined that the cause of his death was two stab wounds in his chest, and that in his opinion either of the wounds would have been sufficient to cause death.

This ended the evidence.

■ We have uniformly held that the function of the Criminal Court of Appeals as respects the sufficiency of the evidence is limited to ascertaining whether there is a basis in the evidence on which the jury could reasonably conclude that accused was guilty as charged. Walker v. State, 89 Okl.Cr. 284, 207 P.2d 341; Frizzell v. State, Okl.Cr., 299 P.2d 547; Runyon v. State, Okl.Cr., 304 P.2d 353.

■ The unrefuted evidence shows that the defendant and one Willie Madison held the victim while one Betty Lois Hayes was cutting at him with a knife, and that after the victim pulled loose by slipping out of his jacket and shirt and tried to run away the defendant pursued him and when he caught up with him, Riley dropped to the ground mortally wounded by two stab wounds, and the defendant then "stomped" him and was heard to remark as he left the scene: "He got what he deserved."

■ It is next argued by defense counsel that the court erred in not allowing counsel for the defendant to place upon the stand as a defense witness an officer whom he desired to question relative to a purported written statement made by the defendant to the officers following his arrest for murder. He cites Goodner v. State, 32 Okl.Cr. 192, 239 P. 928; Price v. State, 1 Okl.Cr. 358, 98 P. 447; Lail v. State, 14 Okl.Cr. 596, 174 P. 1099; and Roddie v. State, 19 Okl.Cr. 63, 198 P. 342, as his authority. These cases hold that statements made by a defendant so closely connected with the commission of the offense charged as to be considered part of the res gestae are admissible against him.

■ If the defendant had confessed to the officers at the jail after the homicide, such statements, if voluntary, would of course have been admissible. But statements not spontaneously made at the scene, but at a time minutes removed, and self-serving, could not be shown by the defendant. The cases cited by reason of factual differences are not in point.

We cannot say that the penalty assessed is excessive. In fact, in view of the record, the jury gave defendant the benefit of every doubt and the court was lenient in the assessment of punishment. It was not necessary for the defendant to have actually stabbed the deceased with a knife, if he helped hold him while a confederate did the stabbing.

The judgment and sentence is therefore affirmed.

JONES, P. J., and BRETT, J., concur.