EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* VÍCTOR LÓPEZ JIMÉNEZ, acusado y apelante.

*Número:* CR-67-82      *Resuelto:* 29 de mayo de 1968

*William Fred Santiago, Dennis Martínez Irizarry* y *José M. Canals,* abogados del apelante; *J. F. Rodríguez Rivera, Procurador General Interino,* abogado de El Pueblo.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

El apelante fue acusado de acometer y agredir a un ser humano con un arma contundente con el propósito firme y decidido de matarlo. Fue convicto de ataque para cometer homicidio y sentenciado a cumplir de uno a tres años de presidio.

Apunta en apelación que (1) el veredicto es contrario a la prueba; y (2) el tribunal de instancia incidió al permitir una enmienda a la acusación y no suspender el caso de acuerdo con la Regla 38 de las de Procedimiento Criminal.

Los hechos del caso son los siguientes:

El día 1 de enero de 1966, a eso de la 1:30 de la mañana, el Sr. Andrés Guivas Rivera y su hijo Andrés Guivas Ramos viajaban en un taxi propiedad del padre y conducido por el hijo. Al llegar a un rótulo de "Pare", en la calle William Jones, de Santurce, detuvieron el vehículo, e "inmediatamente se agruparon un grupo de muchachos", le pidieron que los llevaran a un sitio a lo que el Sr. Guivas Rivera contestó que el taxi estaba ocupado y no iban a ningún sitio. Uno de los jóvenes abofeteó al Sr. Guivas Rivera. Éste y su hijo se bajaron del carro y sostuvieron una lucha cuerpo a cuerpo con dos de los jóvenes. El apelante comenzó a luchar con el hijo mientras que Guivas Rivera lo hacía con el otro. En algún momento de la lucha el apelante se zafó de la lucha que sostenía con el hijo de Guivas Rivera y fue hacia donde éste luchaba contra el otro joven. Se abalanzó sobre éste y lo aguantó. Mientras lo aguantaba, el otro joven sacó algo de debajo de la chaqueta y lo hirió. Luego se dieron a la fuga. El hijo del perjudicado advirtió al apelante que "eso no se iba a olvidar" y éste le replicó que él era "Víctor de

la 26." El hijo llevó a su padre al Hospital Auxilio Mutuo para ser curado de la herida recibida y de ahí lo refirieron al Hospital San Patricio.

Posteriormente, el hijo identificó al apelante como el que había aguantado a su padre mientras el otro lo hería. Fue, además, identificado por el perjudicado y por su hijo, durante el juicio.

Sobre esos hechos no hay controversia y así lo admite el apelante en su alegato.

Al comienzo del juicio, el fiscal solicitó enmendar la acusación para que en ella se alegase "en concierto y de común acuerdo con otra persona acometió y agredió con un arma a otra persona." La defensa se opuso porque se pretendía añadir nuevos acusados. El juez sentenciador indicó que no se acusaba a más nadie y permitió la enmienda. La defensa entonces solicitó la suspensión del proceso de acuerdo con la referida Regla 38. Arguyó el fiscal que se trataba de una enmienda de forma, no de sustancia. El tribunal de instancia negó la suspensión. Luego de exponer el ministerio público la teoría del caso, el tribunal de instancia instruyó al jurado que "Entonces el tribunal cree que es un caso de Ataque para Cometer Homicidio y descartarán el ataque para Cometer Asesinato en este caso."

1.—En apoyo de su primer señalamiento aduce el apelante que en el delito por el cual fue enjuiciado y convicto, no puede en forma alguna darse la situación de designio previo, de designio compartido, de acuerdo entre los actores, porque el homicidio voluntario se caracteriza por lo súbito de la pendencia; que como el apelante no esgrimió arma alguna contra el perjudicado, la coautoría tendría que establecerse sobre la base de acuerdo previo, y dicho acuerdo previo es una imposibilidad lógica y jurídica en una situación que se caracteriza por una súbita pendencia y una corta lucha cuerpo a cuerpo; que los hechos del presente caso ni aun remotamente se prestan para determinar que el aquí ape-

lante conocía de antemano que uno de sus acompañantes poseía o·iba a usar una cuchilla; que por tanto las instrucciones al jurado son erróneas. No tiene razón.

■ ·Los tribunales generalmente han sostenido que una persona es culpable de homicidio, como principal o coautor, si en alguna forma ha ayudado o asistido al actor principal durante la comisión del delito. Además, se ha sostenido que si una persona incita o envalentona a otra, bajo circunstancias distintas a una conspiración, es principal en el delito de homicidio si el perjudicado muere. *State* v. *Recke*, 278 S.W. 995 (Mo. 1925). Un participante en una pelea se juzgará de acuerdo a su propia intención y no a base de la intención de otra persona, a menos que adopte y ratifique la intención de esa otra persona ayudándole por medio de su conducta, o envalentonándola por medio de gestos o palabras. *Bibby* v. *State*, 65 S.W. 193 (Texas 1901). La intención de matar o de ayudar a otro a la comisión del delito puede nacer [y en muchas ocasiones nace] en el mismo momento del crimen. En esas circunstancias el ayudante se convierte en principal o coautor porque adopta la intención criminal del principal. *State* v. *Ochoa*, 72 P.2d 609 (N.M. 1937). Véanse, además, *State* v. *Salazar*, 431 P.2d 62 (N.M. 1967); *People* v. *Martin*, 85 P.2d 880 (Colo. 1938). Una persona envuelta en un ataque para cometer homicidio que ayuda al actor principal aguantando al perjudicado para que el otro le aseste un punzonazo es principal o coautor en dicho ataque. Evidencia que demuestre que un acusado y otra persona estuvieron envueltos en una pelea con un perjudicado, y el acusado aguantó al perjudicado mientras otro lo .acuchilló, es suficiente para sostener un veredicto de homicidio voluntario contra el acusado. *Brutton* v. *State*, 305 P.2d 1045 (Okla. Crim. 1957). Véanse, además, *Constituent Elements of Crime*, Silving, Helen, 1967, pág. 141; la monografía titulada *Who other than the Author is liable for Manslaughter*, 95 A.L.R.2d 175.

El apelante parece descansar en el caso de *Bibby* v. *State*, supra, pero ese caso es muy diferente al caso de autos. Allí no hubo prueba alguna de que el apelante hubiera utilizado un arma o que supiera que sus acompañantes en la comisión del delito usaron cuchillos como lo hicieron, lejos de donde se encontraba el apelante; tampoco hubo prueba de que éste en ese caso, por alguna actuación suya, ayudase o instigara a sus compañeros en el uso de cuchillos por éstos.

En el presente caso la prueba no rebatida demostró que si bien el apelante no usó el arma que causó la herida del perjudicado, sin embargo, ayudó al atacante a realizar el acto, desprendiéndose de su lucha y corriendo a aguantar al perjudicado mientras el otro joven le infería la herida. Como dijimos anteriormente, la intención de matar o de ayudar, puede nacer en el momento mismo de la comisión del delito.

■ Se queja el apelante de que las instrucciones al jurado fueron erróneas en cuanto al elemento de intención en el delito de ataque para cometer homicidio. Las hemos examinado y encontramos que no lo son.(1) En realidad esas

_____

(1) Las instrucciones en cuestión fueron las siguientes: 

". .. . No es necesario que en el delito de homicidio exista la intención de destruir la vida de la persona agredida, pero tal intención puede existir en la mente del agresor en el momento de realizar el acto fatal y cuando el acusado ha cometido una agresión con tal intención, o sea, la intención de matar sin propósito entonces, y en ausencia de malicia el delito queda reducido o convertido en uno de Ataque para cometer Homicidio. En otras palabras, más claro, el delito de Ataque para cometer Homicidio no es otra cosa que un Homicidio que se ha frustrado, que no ha alcanzado consumación porque ha intervenido algún factor ajeno a la voluntad del agresor que ha impedido la consumación. En otras palabras que [no] ocurra la muerte pero que han estado presentes todos los factores para que de ocurrir la muerte la misma hubiera consistido en un delito de Homicidio Voluntario.

La palabra 'intención' no ha sido precisamente definida en nuestro Códito [*sic*] por ley, pero ella denota un designio respecto a determinar la muerte. Y repito, para ustedes determinar frente a determinado cuadro de hechos si se ha cometido el delito de Ataque para cometer Homicidio ustedes deben hacerse la siguiente pregunta; 'de haber muerto el alegado agredido su muerte habría constituído el delito de Homicidio Voluntario'?

instrucciones, lejos de perjudicar al acusado lo favorecieron grandemente.

■ Bajo el Art. 36 del Código Penal (33 L.P.R.A. sec. 82),(²) una persona puede ayudar, aconsejar o incitar a otra a la comisión de un delito sin que previamente haya entrado en una conspiración con esa persona. *People* v. *Madison*, 51 Cal. Rptr. 851 (1966); *People* v. *Fleming*, 191 Cal. App.2d 163 (1960); *People* v. *Turner*, 86 Cal. App.2d 791 (1948).

■ Al terminar sus instrucciones al jurado, preguntó el tribunal si las partes tenían alguna instrucción que someter a la consideración del tribunal por escrito. Tanto el ministerio público como la defensa contestaron que ninguna. Tampoco se adujo objeción alguna a las instrucciones. Por lo tanto, el apelante renunció a cualquier error en las mismas que no lesionara sus derechos fundamentales. *Pueblo* v. *Del Valle*, 91 D.P.R. 174, 179 (1964).

Concluimos de lo expuesto, que no se incurrió en el error primeramente apuntado.

2.—Sostiene el apelante en apoyo del segundo señalamiento que la enmienda a la acusación y la negativa del juez sentenciador a suspender el proceso le perjudicaron en

---

Y si ustedes se contestan esta pregunta en la afirmativa entonces frustrada la muerte pero presente todos los requisitos para que la muerte se hubiese producido el delito cometido es de Ataque para cometer Homicidio . . . .

. . . como la intención es un fenómeno subjetivo, es algo que cala dentro, no se ve, no tiene forma, no tiene cuerpo, la misma ha de colegirse, ha de inferirse, de las circunstancias relacionadas con el hecho mismo que se investiga . . . ."

(²) El Art. 36 del Código Penal dispone que:

"Todas las personas complicadas en la comisión de un crimen, ya fuere grave o menos grave, y que directamente cometieren el acto constitutivo del delito o no hallándose presentes, hubieren aconsejado su comisión o incitado a ella; y todas las personas que aconsejaren o incitaren a menores de catorce años, lunáticos o idiotas, a cometer algún crimen; o que, por medio de fraude, artificio, o violencia, ocasionaren la embriaguez de otra persona, con el fin de hacerle cometer un crimen, son principales o autores en el crimen cometido."

sus derechos fundamentales porque "evidentemente una defensa preparada con relación a la acusación original tiene que ser necesariamente distinta cuando se adiciona el elemento de la conspiración."

██ Bajo la Regla 38 de Procedimiento Criminal debe posponerse el juicio si en opinión del tribunal la enmienda propuesta a la acusación perjudica los derechos sustanciales del acusado, si la incongruencia es de tal naturaleza que la prueba establece un delito distinto del imputado, no incluido en éste o un delito fuera de la jurisdicción del tribunal, deberá sobreseerse el proceso. En el caso de autos, no están presentes estas circunstancias. Se trataba de una enmienda en cuanto a la forma en que ocurrieron los hechos que ni siquiera era necesaria, pues tal como estaba redactada la acusación era suficiente sin tener que alegar el común acuerdo. El efecto procesal del Art. 36 del Código Penal de Puerto Rico es que todas las personas complicadas en la comisión de un delito, ya lo cometieren directamente o ayudando en su comisión, pueden ser acusados, procesados y convictos como principales y no es necesario alegar hechos adicionales contra un coautor, que los necesarios contra el principal. Así se determinó en *Ochoa* v. *State*, supra, bajo un estatuto similar al Art. 36 de nuestro Código Penal. Por lo tanto, no se cometió el segundo error apuntado.

*En vista de lo expuesto, se confirmará la sentencia dictada en este caso por el Tribunal Superior, Sala de San Juan, en 22 de agosto de 1966.*

El Juez Presidente Señor Negrón Fernández no intervino. El Juez Asociado Señor Dávila concurre con el resultado.